# Supreme Court of Louisiana

The Opinions handed down on the **28th day of June, 2024** are as follows:

**PER CURIAM:**

2024-B-00149        *IN RE: ROBERT WILLIAM HJORTSBERG*

SUSPENSION IMPOSED. SEE PER CURIAM.

Hughes, J., dissents in part for the reasons assigned by Justice Crain.
Crichton, J., additionally concurs and assigns reasons.
Crain, J., dissents in part and assigns reasons.
McCallum, J., dissents in part for the reasons assigned by Justice Crain.

SUPREME COURT OF LOUISIANA

NO. 2024-B-0149

IN RE: ROBERT WILLIAM HJORTSBERG

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Robert W. Hjortsberg, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

*Count I*

In January 2021, respondent self-reported through his attorney that he would plead guilty to a federal misdemeanor bill of information based on his failure to file an income tax return for 2017. The underlying facts reflect that respondent failed to file an income tax return for two years, both 2017 and 2018, but he obtained a negotiated plea for a single year in exchange for truthful testimony and cooperation in a federal criminal trial.

The ODC alleges that respondent's conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

*Count II*

Zarius Brown was charged by bill of information with attempted first degree murder of a police officer, illegal possession of stolen things, and aggravated criminal damage to property. Respondent was retained to represent Mr. Brown in the criminal matter, which was pending in the 22nd Judicial District Court for the Parish of Washington.

On the first day of the two-day trial, Mr. Brown was with respondent while a panel of prospective jurors on *voir dire* was questioned by the trial court and then by the prosecutor. Following this questioning, the trial court recessed for a brief restroom break. During the break, Mr. Brown left the courthouse and did not return. Efforts made to locate Mr. Brown were unsuccessful.

The trial court noted that Mr. Brown had voluntarily absented himself after trial had commenced. Thus, according to the trial court, Mr. Brown's presence was not required, and the trial would continue. Respondent moved for a continuance and a mistrial, but the trial court denied the motions. Respondent then advised the court that he would not participate in the trial and would simply sit at the counsel table, taking no role in the defense. The jury was picked without any input from respondent on Mr. Brown's behalf. Respondent also did not give an opening statement or closing argument, made no objections, and did not participate in cross-examination of the State's witnesses or call any witnesses for the defense.

At the conclusion of the trial, the jury found Mr. Brown guilty as charged on all counts, and he was sentenced by the trial court. However, the convictions and sentences were reversed on appeal and the case remanded for a new trial after respondent's conduct was found to be a clear case of ineffective assistance of counsel:

> Defense counsel's representation of the defendant, in his refusal to participate at trial, clearly fell below an objective standard of professional reasonableness. With regard to all

2

counts, we find that the defendant demonstrated prejudice, the second prong of *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. Defense counsel did not object to improper comments by the prosecution, the improper jury instruction, or the leading of the witnesses. Additionally, defense counsel was silent and made no objections to the prosecutor's comments regarding the defendant's flight and his failure to take the stand. Accordingly, we find that the defendant showed that there was a reasonable probability that but for defense counsel's unprofessional errors, the result of the proceedings would have been different regarding all counts.

*State v. Brown*, 21-0625, pp. 15-16 (La. App. 1st Cir. 2/16/22), 2022 WL 472966 (not designated for publication).[1]

The ODC alleges that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

## DISCIPLINARY PROCEEDINGS

In August 2022, the ODC filed formal charges against respondent. Respondent, through counsel, filed an answer admitting that he failed to file his federal income tax returns for 2017 and 2018 in violation of Rules 8.4(a), 8.4(b), and 8.4(c). Respondent denied any misconduct in Count II, asserting that he acted in good faith to protect the interests of his client.

Considering respondent's answer, the matter proceeded to a formal hearing on the merits.

---

[1] Judge Guidry authored the opinion for the court of appeal. Judge Chutz concurred, stating, "In my view, this case does not present an instance of ineffective assistance of counsel, but of the complete denial of the defendant's constitutional right to counsel." Judge Holdridge dissented as to the reversal of the defendant's convictions and sentences, stating, "In this case, the circumstances and facts surrounding the defendant's failure to appear at the trial and the lack of participation at the trial by the defendant's counsel should be examined at a contradictory hearing in response to a post-conviction relief application."

3

*Formal Hearing*

The hearing committee conducted the formal hearing on February 3, 2023. The ODC introduced documentary evidence and called respondent to testify before the committee. Respondent called the following witnesses to testify: Judge William Burris of the 22nd Judicial District Court; Judge Camille Buras of the Orleans Parish Criminal Court; attorney Thomas Calogero; Susan Lampton, an employee of the World War II Museum, Carl Rochet, respondent's best friend; and Bivian "Sonny" Lee, the founder and CEO of Son of a Saint, a nonprofit organization.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee summarized the testimony as follows:

Respondent – Regarding Count I, respondent admitted that he willfully failed to file income tax returns for 2017 and 2018, for which he was prosecuted in the United States District Court for the Eastern District of Louisiana. On March 21, 2021, respondent pleaded guilty to a misdemeanor violation of 26 U.S.C. § 7203. He was sentenced to six months of home detention, thirty-six months of probation, payment of $31,651 in restitution, and a $4,000 fine. Respondent also agreed as part of his plea to provide testimony in the federal trial of Jason Williams (his former employer) and Nicole Burdett, if needed, but he was not called to testify in that federal trial. Respondent has paid the restitution ordered by the court as part of his sentence.[2] Respondent indicated that his failure to file income tax returns resulted from carelessness. He added that the person who filed his taxes in previous years had held himself out as a CPA, and after respondent learned his taxes were not filed,

_____

[2] Respondent eventually filed tax returns for 2017 and 2018 jointly with his wife, who was not prosecuted. The returns included respondent's 1099 income for his work during 2017 and 2018, as well as his wife's W-2 income for those years.

4

this person advised it was "no big deal." Respondent noted that he cooperated fully with the ODC and was not a public official.

Regarding Count II, respondent testified that Mr. Brown had been charged with several felony counts in the 22nd JDC before Judge William Burris. The trial commenced on March 10, 2020. After the prosecution and the judge examined the first panel of jurors on *voir dire*, a restroom break was taken. Mr. Brown did not return to the courtroom after the break, and efforts to locate him were unsuccessful. Respondent testified that he had no knowledge Mr. Brown would skip bail. This situation – the client absenting himself during the trial – was a first for respondent, Judge Burris, and the prosecutor.

Respondent moved for a continuance as well as a mistrial, both of which were denied, but he did not request to withdraw as counsel, believing it would be improper and result in prejudice to his client. Respondent instead made the strategic decision to not participate in the trial. He made these decisions "on the spot." Respondent felt his actions were taken in the best interests of his client because the case involved a police officer's testimony versus his client's version of events. Judge Burris did not hold respondent in contempt for failure to participate at trial, stating: "That is your strategic choice." Respondent did not request the opportunity to take writs to the court of appeal.

Respondent had not received prior instructions from Mr. Brown as to whether he (Mr. Brown) would testify or how to proceed without his presence, and respondent could not recall whether he sought advice from attorneys about how to proceed with an absent client. Respondent was present in the courtroom during the entire trial, although he did not question witnesses, make arguments, or enter evidentiary objections. Following the two-day trial, the jury found Mr. Brown guilty on all counts.

5

On appeal, the First Circuit reversed the conviction and remanded the case for further proceedings for ineffective assistance of counsel, including an improper jury charge to which respondent did not object. Respondent credibly testified that he was not trying to disrespect the court and that he was open about what he was doing. Neither Judge Burris nor the prosecutor reported respondent to the ODC. Rather, an appellate attorney for the district attorney's office reported respondent after the First Circuit rendered its opinion.

<u>Judge William Burris</u> – Judge Burris, who testified by phone, indicated that he presided over the Brown trial (Count II). *Voir dire* of the jury had begun, and Mr. Brown, who was on bail and not incarcerated, had left the courtroom but did not return. Judge Burris had never experienced this before. He credibly testified that respondent was agitated, visibly upset, and unsure about what to do, but was also punctual and respectful to the court. Respondent had moved for a continuance and a mistrial, both of which Judge Burris denied. Although he was frustrated by respondent's lack of participation at trial, Judge Burris did not hold respondent in contempt for the reason that a criminal defendant is not required to do anything at trial except be punctual and respectful. Although respondent did not request time to obtain ethical guidance or seek writs, had he done so, Judge Burris probably would not have granted more than a short time to file an emergency writ, and he would not have granted a motion to withdraw. Judge Burris did not report respondent's conduct to the ODC for the same reason that he did not hold respondent in contempt – doing so would be tantamount to telling someone he would "have to potentially breach the Fifth Amendment by speaking or by participating in trial." Judge Burris had a discussion much later with the assistant district attorney who thought the First Circuit's decision instructed the DA's office to report the matter to the ODC. Judge Burris did not know that he would agree with that interpretation, but since the DA's office had already reported the matter, it was not necessary for him to do so. Judge

6

Burris testified that his number one priority in a jury trial, outside of the constitutional rights of the defendant, is to value and honor the commitment made by jurors.

Judge Camille Buras – Judge Buras credibly testified that respondent, who had argued many motions before her, was prompt, prepared, and straightforward, and has a very good professional reputation. When asked whether she had ever presided over a trial where a defendant left the courtroom, Judge Buras responded that it was very rare, recalling only two occasions in which it happened in her court. In one instance, the jury had already been sworn and she then declared a mistrial.

Thomas Calogero – Mr. Calogero, who has practiced as a criminal defense attorney for approximately thirty years, credibly described respondent, with whom he has worked, as very diligent, very prepared, and a person of outstanding character. Mr. Calogero testified that he never had a situation in which a criminal defendant absented himself after a trial commenced. Mr. Calogero further testified that he had never taken a writ during a trial, although he has heard of it being done.

Susan Lampton – Ms. Lampton has known respondent through his volunteer work and fundraising for the World War II Museum. Ms. Lampton credibly testified to the good character of respondent.

Carl Rochet – Mr. Rochet, a marketing director for McDonald's, has known respondent since college. Mr. Rochet credibly described respondent as a person of good character.

Sonny Lee – Mr. Lee credibly testified that respondent, who volunteered with Son of a Saint, has done what he said he would do and more.

The committee acknowledged respondent's admission that he failed to file income tax returns for 2017 and 2018. Based upon the evidence presented at the hearing, the committee made additional factual findings regarding Count I, including the following:

1. Respondent's combined adjusted gross income for 2017 and 2018 was $153,833, and the combined tax owed for 2017 and 2018 was $44,811.

2. Respondent had a dishonest or selfish motive in failing to file his tax returns. As part of his guilty plea, he admitted knowing that he had to file his 2017 tax return by October 15, 2018, which he did not do. Respondent testified that his reason for not filing his 2017 tax return was carelessness, but on cross-examination by the ODC, he admitted that his failure to file was willful and that he testified to such as part of his plea agreement. Respondent had the educational background and experience to understand his obligation to timely pay taxes on his income and file tax returns. The reliance upon an advisor who stated it is "no big deal" to not file tax returns is not reasonable.

3. Respondent has paid the full amount of restitution for failing to file his 2017 tax return. He has also paid the full amount of his 2018 taxes, according to his filed amended return for that year.

4. After deciding to plead guilty, respondent self-reported to the ODC and has maintained a cooperative attitude throughout these disciplinary proceedings.

5. Based upon the credible testimony of Judge Buras and Mr. Calogero, respondent has a good professional reputation. Based upon the credible testimony of Ms. Lampton, Mr. Rochet, and Mr. Lee, respondent has volunteered with charitable organizations and is a person of good character and reputation in the community.

6. Respondent credibly expressed remorse for his actions that led to his admitted rules violations.

7. Respondent is not a current or former public official.

Based upon the testimony and other evidence in the record, the committee made the following additional factual findings regarding Count II:

8

1. Respondent credibly testified that he had no knowledge that his client, Mr. Brown, would not return to the courtroom after his trial began.

2. According to the credible testimony of Judge Burris, respondent was visibly upset and agitated when his client did not return to the courtroom during trial.

3. Respondent credibly testified that he made the strategic decision not to participate in the trial.

4. Respondent credibly testified that he believed it was in the best interests of his client not to proceed with the trial. Respondent was prepared for trial. Based upon the credible testimony of respondent and Judge Burris as to what occurred after Mr. Brown left the courtroom, respondent had no selfish motive or intention when he made the decision not to participate in the trial.

5. Respondent, on behalf of his client, argued for a mistrial which was denied.

6. Respondent credibly testified that he had no intention to disrespect the court or engage in conduct that was prejudicial to the administration of justice.

Regarding the rule violations at issue in Count I, the committee acknowledged respondent's admission that his misconduct violated Rules 8.4(a), 8.4(b), and 8.4(c). As to Count II, the committee found the ODC did not carry its burden of proof. With respect to Rule 1.3, the evidence introduced at the hearing demonstrated that respondent appeared for and was prepared for trial. No credible evidence was introduced to show that he was complicit in any way with Mr. Brown's decision to absent himself from the trial. Indeed, respondent testified that he had no knowledge that Mr. Brown would skip bail, and Judge Burris credibly testified that respondent was visibly upset and unsure of what to do. Furthermore, respondent argued to the court that he could not proceed with the trial competently without his client due to the nature of the case, which turned on his client's word against that of the police officer. Respondent moved for a mistrial and remained in the courtroom during the two days of trial. He made a strategic decision as Mr. Brown's attorney to do what

he thought was in the best interest of his client. No credible evidence was introduced at the hearing to show that the decision to not further participate in the trial was to benefit himself or was made because he was unprepared for trial.

With respect to Rule 8.4(d), the committee noted that respondent acted in what he believed to be the best interest of his client. He had not previously faced the situation of a client absenting himself during trial and neither had the presiding judge or the prosecutor. The decision was made during the heat of trial. Respondent was not ordered by the court to participate in the trial. Balanced against respondent's actions, and what he believed were the best interests of his client, is the potential adverse impact on the justice system. The precedential effect of no ethical violation for an attorney's unwillingness to actively participate on behalf of his absent client during trial has a potential adverse impact on the administration of justice, which is concerning; however, no credible evidence was presented to show that respondent was complicit in any way with his client's absence. To the contrary, Judge Burris testified that respondent was agitated and visibly upset after learning his client left the premises. Respondent was open with the court about why he felt he could not continue to participate in the trial without his client. Furthermore, the evidence showed that he was prepared for trial, and his decision to not participate in the trial was not self-serving.

The committee determined respondent knowingly violated duties owed to the public and the legal profession. His conduct reflects poorly on the profession and violated obligations he owed to the public. His conduct caused actual harm because his taxes were not paid until well after he was required to do so by law. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension.

As mitigating factors, the committee found the absence of a prior disciplinary record, good faith effort to rectify the consequences of the misconduct, full and free

disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remorse. The only aggravating factor found by the committee was a dishonest or selfish motive.

Concluding that respondent's misconduct was limited to the charges set forth in Count I, and further considering this court's prior jurisprudence addressing similar misconduct, the committee recommended that respondent be suspended from the practice of law for a period of six months, with all but two months deferred, followed by a one-year period of probation with the condition that any misconduct during the period of probation will result in the deferred portion of the suspension becoming executory. The committee also recommended that respondent be assessed with all costs and expenses of this proceeding.

The ODC filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same, with one clarification: the committee's finding that respondent asked for a mistrial after Mr. Brown absented himself from trial is correct and supported by the record; however, respondent also asked for a continuance.

With respect to Count I, the board determined the committee correctly found that respondent violated Rules 8.4(a), 8.4(b), and 8.4(c). With respect to Count II, the board agreed that respondent did not violate Rule 8.4(d) and adopted the committee's analysis regarding same; however, the board declined to adopt the finding that Rules 1.3 and 8.4(a) were not violated. Although respondent acted in what he believed was the best interest of his client, he did not act with reasonable diligence in representing Mr. Brown. The evidence introduced at the hearing

11

demonstrated that respondent appeared for and was prepared for the trial of his client. However, after Mr. Brown left the courthouse and the court denied respondent's motions for a continuance and for a mistrial, respondent failed to participate in the proceedings. Respondent failed to participate in *voir dire*, gave no opening statement, made no objections, conducted no cross-examination of any witness, and refused to make a closing argument.

The board determined that respondent violated a duty owed to his client by failing to participate in trial and violated duties owed to the public and the legal profession by willfully not filing his tax returns. He acted knowingly and intentionally, and his conduct caused actual harm. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is suspension.

As aggravating factors, the board found a dishonest or selfish motive, multiple offenses, substantial experience in the practice of law (admitted 2008), and illegal conduct. As mitigating factors, the board found the absence of a prior disciplinary record, good faith effort to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board, character or reputation, imposition of other penalties or sanctions, and remorse.

After further considering the court's prior jurisprudence addressing similar misconduct, the board determined that the sanction recommended by the committee is reasonable and addresses respondent's misconduct in Count I. The board noted that under the unique factual circumstances of Count II, respondent's violation of Rules 1.3(a) and 8.4(a) should not add to the severity of the sanction.

Accordingly, the board recommended that respondent be suspended from the practice of law for six months, with all but two months deferred, followed by a one-year of probation with the condition that any misconduct during the period of probation will result in the deferred portion of the suspension becoming executory.

The board further recommended that respondent be assessed with all costs and expenses of this proceeding.

Respondent and the ODC filed objections to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

Respondent does not dispute the misconduct or the charged rule violations in Count I. Specifically, he admits that he willfully failed to file income tax returns for 2017 and 2018, in violation of Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

In Count II, respondent admits that he did not actively participate in the criminal trial of his client, the defendant, after the client left during *voir dire* and failed to return to the courtroom; however, he denies any professional misconduct. We disagree and find that respondent violated Rules 1.3, 8.4(a), and 8.4(d) as charged.

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. *United States v. Cronic*, 466 U.S. 648, 653 (1984).

13

The right to the effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. *Id.* at 656. If counsel entirely fails in this regard, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. *Id.* at 659.

Here, respondent was physically present in the courtroom during Mr. Brown's trial, but he provided no defense at all to Mr. Brown. He did not participate in jury selection, cross-examine the State's witnesses, or hold the State to its burden of proving the alleged criminal offenses beyond a reasonable doubt. Respondent did not deliver an opening statement or closing argument to emphasize the State's burden of proof. He did not object to improper comments by the prosecution, improper jury instructions, or the leading of witnesses. In other words, respondent was no more effective in representing Mr. Brown than a proverbial potted plant. As a result of respondent's inaction, the court of appeal reversed Mr. Brown's convictions and sentences and the case was remanded for a new trial, thereby wasting the time and resources of the trial court, the attorneys representing the State, and the citizens participating in jury service. We find that under these circumstances, respondent did not act with reasonable diligence in representing Mr. Brown and that his conduct was prejudicial to the administration of justice.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and

mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to his client, the public, and the legal profession. He acted knowingly and intentionally and caused actual harm. We agree with the hearing committee and the disciplinary board that the applicable baseline sanction is suspension. The record supports the aggravating and mitigating factors found by the board.

Under the unique circumstances of this case, we find the appropriate sanction is a six-month suspension, with all but thirty days deferred, followed by a one-year period of probation.

## DECREE

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Robert W. Hjortsberg, Louisiana Bar Roll number 31587, be and he hereby is suspended from the practice of law for a period of six months. It is further ordered that all but thirty days of this suspension shall be deferred. Following the completion of the active portion of his suspension, respondent shall be placed on probation for a period of one year. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter of this disciplinary proceeding are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**No. 2024-B-00149**

**IN RE: ROBERT WILLIAM HJORTSBERG**

**Attorney Disciplinary Proceeding**

**Crichton, J., additionally concurs and assigns reasons.**

I agree with the majority opinion. With respect to Count II, regarding respondent's failure to participate in the criminal trial, respondent had an obligation as an officer of the court to do more than merely sit silently. As a result, I agree with the majority that he violated Rules 1.3, 8.4(a), and 8.4(d) as charged.

I write separately because, in my view, respondent's violations of the rules as set forth in Count II present a policy matter for this Court. In this case, as the majority explains in detail, respondent moved for a continuance when his retained client—who was charged with attempted first degree murder of a police officer, among other charges—fled the courthouse during jury selection. This rare situation occurred without warning and presents to the Court as a *res nova* issue in the professional responsibility context. Though respondent's initial confusion over the situation was understandable, a lawyer in this situation cannot opt to be the proverbial potted plant.[1] The effect of respondent's decision was that, by absconding the courthouse during trial, his client was permitted a retrial due to respondent's choice to sit entirely mute—a result the justice system cannot condone.[2]

---

[1] *See* Iran-Contra Hearings; Note of Braggadocio Resounds at Hearing, N.Y. Times, July 10, 1987, at A7 (noting retort of attorney Brendan V. Sullivan to Senator Daniel Inouye: "Well, sir, I'm not a potted plant. I'm here as the lawyer. That's my job.").

[2] The majority opinion explains that the hearing committee in this case found absolutely no credible evidence that respondent was complicit in his client's decision to absent himself from trial or not return. Therefore, while this case is distinguishable on the facts, I reiterate my comments in *State v. Brown*, 2018-1999 (La. 9/30/21), 330 So. 3d 199, 285-89, regarding a lawyer's obligations not only to his client, but also to the administration of justice.

Because of the *res nova* nature of this issue and the facts as presented at the hearing, I further agree with the majority that we should not impose any additional period of suspension beyond that ordered for Count I for the Count II violations.

# SUPREME COURT OF LOUISIANA

## No. 2024-B-00149

## IN RE: ROBERT WILLIAM HJORTSBERG

Attorney Disciplinary Proceeding

**CRAIN, J.**, dissents in part,

The respondent's client absconded during trial without his knowledge. The respondent moved for a continuance and a mistrial, but the trial court denied the motions. The judge then proceeded to trial, and the jury found the defendant guilty as charged on all counts. The respondent strategically chose not to participate in the trial. The client was not present to express his wishes, nor to assist in his defense.

The court of appeal reversed the convictions and sentences. It remanded the case for a new trial, finding respondent's conduct to be ineffective assistance of counsel. This was error. Ineffective assistance should have been raised on post-conviction relief, not on direct appeal, affording respondent an opportunity to explain his inaction at a post-conviction hearing. *State v. Howard*, 98-0064, (La. 4/23/99), 751 So.2d 783, 802.

I do not believe respondent's choice to not participate violates the Rules of Professional Conduct. The defendant has the right to assistance of counsel. U.S. Const. Amend. VI; La. Const. art. 1, § 13. However, the respondent had no one to assist because the defendant absconded. Through this act, the respondent's ethical obligation to the defendant also disappeared. Further, a defendant must be competent to assist in his defense, or it is a violation of his rights to proceed. La. Code Crim. Proc. art. 641. Here, there was no competent defendant to assist counsel.

1

Under these facts, counsel was not obligated to do anything.  I dissent in part and find no violation of count two.